UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Robert Brooks Hoel,                              File No. 25-cv-3581 (ECT/DTS)

        Plaintiff,

v.                                               **OPINION AND ORDER**

Hennepin County, *a Minnesota political
subdivision*; Dawanna Witt, *Sheriff – official
capacity*; S. Bukkila, *Sgt. – Badge #526*; D.
Welwolie, *Deputy – Badge #703*; B.
Brugger, *Deputy – Badge #246*;
Helmandollar, *Deputy – Badge #203*;
Dhimbil, *Deputy – Badge #649*; Brandon
Butler, *Lt. – Badge #117*; John Doe, *1 –
Court Security Officer*; and John Does, *2–
10*,

        Defendants.

---

Robert Brooks Hoel, Minneapolis, MN, pro se.

Matthew Lloyd Robert Messerli, Hennepin County Attorney's Office, Minneapolis, MN,
for Defendants Hennepin County, Dawanna Witt, S. Bukkila, D. Welwolie, B. Brugger,
Helmandollar, Dhimbil, Brandon Butler, and John Does 1–10.

---

Pro se Plaintiff Robert Brooks Hoel claims that Hennepin County Government
Center security officers violated his rights under the Federal and Minnesota Constitutions
when they stopped him from recording in the Government Center's security lobby, served
him with a Trespass Notice, and ordered him to leave the building. Defendants seek the
Complaint's dismissal under Federal Rule of Civil Procedure 12(b)(6). The motion will
be granted. Mr. Hoel's claims are not plausibly alleged.

I

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept a complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

Because he is pro se, Mr. Hoel's Complaint is entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[H]owever inartfully pleaded," pro se complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson*, 551 U.S. at 94). "[I]f the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004)). The liberal-construction rule does not excuse a pro se plaintiff from alleging sufficient facts to support the claims he advances. *Stone*, 364 F.3d at 914. And notwithstanding the liberal-construction rule, "pro

2

se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984); *see Sorenson v. Minn. Dep't of Corr.*, No. 12-cv-1336 (ADM/AJB), 2012 WL 3143927, at *2 (D. Minn. Aug. 2, 2012).

In adjudicating Rule 12(b)(6) motions, "courts are not strictly limited to the four corners of complaints," but may consider other matters, including "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[] without converting the motion into one for summary judgment." *Dittmer Props., L.P. v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013) (citation modified); *see Zean v. Fairview Health Servs.*, 858 F.3d 520, 526–27 (8th Cir. 2017) (explaining that consideration of matters outside the pleadings or evidence in opposition to the pleadings generally converts a Rule 12(b)(6) motion into one for summary judgment).

Here, the parties draw facts from two extra-complaint documents—a "Memorandum of Understanding" between the Fourth Judicial District Court and Hennepin County Administration governing the use of cameras and other recording devices in certain areas of the Hennepin County Government Center, ECF No. 18-1, and a "Trespass Notice" issued to Mr. Hoel, ECF No. 14 at 3. These documents may properly be considered in adjudicating Defendants' motion. The Complaint refers to both documents as support for Mr. Hoel's claims. The documents seem integral to the claims.

And no party disputes either document's authenticity. *See* Compl. [ECF No. 1] ¶¶ 12–13 (referencing Memorandum of Understanding); *id.* ¶ 16 (referencing Trespass Notice).[1]

## II

On May 29, 2025, Mr. Hoel entered the Hennepin County Government Center "to use the Law Library." Compl. ¶ 11. He possessed a copy of the Memorandum of Understanding. *Id.* ¶ 13.[2] Mr. Hoel "recorded in the security lobby" of the Government Center. *Id.* ¶ 12. Defendant "John Doe 1 stopped the recording." *Id.* ¶ 14. Mr. Hoel "attempted to show" the Memorandum of Understanding to security officers, evidently to demonstrate that his recording activities did not violate the Memorandum. *See id.* ¶¶ 12–13. One of the officers, Lieutenant Butler, "refused to review the [Memorandum] and summoned deputies." *Id.* ¶ 14.[3] Five deputies—each of whom has been sued in this case—

---

[1]    Defendants filed the Trespass Notice. ECF No. 14 at 3. Like many forms, the Notice form has spaces for the name, address, and other identifying information of the individual to whom it might be issued. *See id.* In the Trespass Notice filed here, only the "First Name" and "Last Name" spaces are filled out, but the name appearing in those spaces is "John Doe." *Id.* Regardless, Mr. Hoel and Defendants agree that the filed Trespass Notice is an authentic copy of the Notice issued to Mr. Hoel. The record does not indicate why Mr. Hoel's name and other identifying information do not appear in the Notice, or why "John Doe" does.

[2]    To be precise, the Complaint alleges that, when Mr. Hoel entered the Government Center, he carried a copy of a "Judicial Order." Compl. ¶ 12. The Complaint does not mention the Memorandum of Understanding by that name. One might reasonably ask whether the document the Complaint refers to as the "Judicial Order" is the Memorandum of Understanding or something different. But Mr. Hoel made clear in his opposition brief that the Complaint's reference to "Judicial Order" is intended to refer to the Memorandum of Understanding. ECF No. 17 at 2; *see* ECF No. 18-1.

[3]    It doesn't matter, but as best I can tell, the Memorandum of Understanding did not address the use of cameras or recording devices in the Government Center's security lobby. *See* ECF No. 18-1 at 1.

then "surrounded [Mr. Hoel] and escorted him out, despite his offer to stop recording and comply." *Id.* ¶ 15.

Before the deputies escorted him out of the Government Center, Lieutenant Butler issued the Trespass Notice to Mr. Hoel. *Id.* ¶ 16; ECF No. 14 at 3. As his justification for issuing the Notice, the Complaint alleges, Lieutenant Butler cited "Recording/Staff Disturbance." Compl. ¶ 16.[4] The Notice included the following paragraph:

> This is notice that due to your behavior and/or conduct while on these premises, Hennepin County hereby prohibits you from entering the [Government Center], parking lot, grounds or other property. Any entry by you hereafter onto such property shall constitute a trespass by you and shall be reported as such to appropriate law enforcement officials, or you will be arrested and delivered to a peace officer. This action is authorized under Minnesota Statutes Section 609.605. A trespass under the statute constitutes a misdemeanor.

ECF No. 14 at 3. The Notice included exceptions that allowed Mr. Hoel to enter the Government Center to receive county services, attend scheduled appointments, and "[w]hen escorted by security staff." *Id.* Before entering the Government Center for any excepted purpose, the Notice instructed Mr. Hoel to check in with security staff when he arrived. *Id.*

The Notice included a section for Mr. Hoel's signature. *Id.* An illegible signature appears in that section, *id.*, but Mr. Hoel does not dispute that the signature is his. The Notice explained that, by signing, Mr. Hoel acknowledged receiving and understanding the

---

[4]    The Trespass Notice does not appear to identify "Recording/Staff Disturbance" as the justification for its issuance. In a section titled "Summary," it seems to read "Noncompliance w/Staff" and "Disturbance." ECF No. 14 at 3.

Notice and its contents. *Id.* The Notice explained, however, that Mr. Hoel's signature did not imply his agreement with the circumstances that prompted the Notice's issuance and did not "waive [his] ability to contest the ban." *Id.* The Notice provided a procedure to contest it. *Id.* The procedure allowed Mr. Hoel to submit a written response to "Security Operations." *Id.* The Complaint does not allege whether Mr. Hoel took advantage of that procedure. *See* Compl. The Trespass Notice expired June 28, 2025. *See id.* ¶ 21; ECF No. 14 ¶ 2 (stating Notice was served on May 29, 2025); ECF No. 14 at 3 (stating Notice would be effective for thirty days).

III

Mr. Hoel asserts ten claims: (1) Through 42 U.S.C. § 1983, Mr. Hoel claims the officers stopped his recording, removed him from the Government Center, and issued the Trespass Notice in retaliation for protected First Amendment activity. Compl. ¶¶ 23–25. (2) Through § 1983, Mr. Hoel alleges "Defendants imposed a categorical ban on recording in a public lobby" in violation of the First Amendment. *Id.* ¶¶ 27–28. (3) Through § 1983, Mr. Hoel claims Defendants denied him access to the Government Center's law library, resulting in a denial of his constitutional right of access to the courts. *Id.* ¶ 30. (4) Through § 1983, Mr. Hoel alleges the Trespass Notice "was imposed without warning, notice, or opportunity to contest" in violation of his procedural-due-process rights under the Fourteenth Amendment. *Id.* ¶ 32. (5) Through § 1983, Mr. Hoel contends the Trespass Notice "was arbitrary and retaliatory" in violation of his substantive-due-process rights under the Fourteenth Amendment. *Id.* (6) Through § 1983, Mr. Hoel claims the officers "restrained" him and "compelled him out" of the Government Center, which amounted to

6

an unreasonable seizure in violation of the Fourth Amendment. *Id.* ¶ 34. (7) Mr. Hoel claims Hennepin County is liable for the officers' constitutional violations under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Id.* ¶ 36. (8) Mr. Hoel claims Defendants' actions violated parallel provisions of the Minnesota Constitution. *Id.* ¶ 38. (9) Mr. Hoel claims Defendants conspired to violate his civil rights in violation of 42 U.S.C. § 1985(3). *Id.* ¶¶ 40–44. (10) Mr. Hoel claims that Sheriff Witt and Lieutenant Butler failed to prevent civil-rights infractions in violation of 42 U.S.C. § 1986. *Id.* ¶ 45.

For relief, Mr. Hoel seeks compensatory and punitive damages; a declaratory judgment that "Defendants' actions violated the First, Fourth, and Fourteenth Amendments (and Minnesota Constitution)"; injunctive relief requiring Hennepin County to "[p]rohibit categorical bans on non-disruptive recording in public lobbies," "[p]rovide warnings before issuing trespass notices," "[r]estrict trespass authority to sworn deputies under neutral standards," and "[t]rain deputies/security on recording rights and due process"; attorney's fees and costs; "[a]dverse inference and spoliation sanctions if video, BWC, or paperwork are destroyed or withheld"; and other relief "the Court deems just and proper." *Id.* at 5–6.

IV

Though not raised by Defendants, there is a subject-matter jurisdiction issue regarding Mr. Hoel's ability to seek forward-looking relief. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (observing that a federal court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party"). To have Article III standing to seek prospective relief, a plaintiff must

show he is likely to suffer future injury resulting from the defendants' conduct and that the sought-after relief will prevent that future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03 (1983). "In future injury cases, the plaintiff must demonstrate that the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *In re SuperValu, Inc.*, 870 F.3d 763, 769 (8th Cir. 2017) (citation modified); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992) ("Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." (citation modified)). "Allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation modified). Each standing element "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Lujan*, 504 U.S. at 561).

Here, the Complaint does not allege facts plausibly showing that Mr. Hoel faces a certainly impending future injury. Regarding this issue, Mr. Hoel alleges only that he "remains at risk of repeat retaliation, especially given his pending civil-rights lawsuits against Minneapolis and St. Louis County." Compl. ¶ 21. Without more, the possibility of this "risk" coming to pass is quite uncertain and speculative. Mr. Hoel does not allege how or why officers might be positioned to retaliate against him based on his prior lawsuits—he does not allege how officers responsible for enforcing the Government Center's recording policies in the future might know about his prior lawsuits. Nor does

Mr. Hoel identify activities he regularly pursues or activities he is certain to pursue at the Government Center that would place him at substantial risk of being subjected to the same suit-prompting conduct again in the future. Subject-matter jurisdiction over Mr. Hoel's claims for forward-looking declaratory and injunctive relief is absent.

V

A

Whether Mr. Hoel's § 1983 individual-capacity constitutional claims should be dismissed depends on qualified immunity. The general rules governing this immunity are settled. In determining whether the officers have qualified immunity, two questions are answered: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional . . . right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009); *see Watson v. Boyd*, 2 F.4th 1106, 1109 (8th Cir. 2021). Courts may consider the questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A § 1983 plaintiff can defeat a claim of qualified immunity only if the answer to both questions is yes. *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009). "Qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Kong Tr. ex rel. Kong v. City of Burnsville*, 960 F.3d 985, 991 (8th Cir. 2020) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)), *cert. denied sub nom.*, *Kong v. City of Burnsville*, 141 S. Ct. 2839 (2021). If the material facts are not genuinely disputed, then the constitutionality of an officer's conduct is a question of law. *See Thompson v. Reuting*, 968 F.2d 756, 759 (8th

Cir. 1992); *Pollreis v. Marzolf*, 66 F.4th 726, 732 n.2 (8th Cir. 2023); *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003).

"For purposes of the second prong, [courts] look to 'the legal rules that were clearly established at the time' the action at issue was taken." *Graham v. Barnette*, 5 F.4th 872, 881 (8th Cir. 2021) (quoting *Davis v. Hall*, 375 F.3d 703, 711 (8th Cir. 2004)). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* at 5–6 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). As the Eighth Circuit has explained, a plaintiff can show that a right was clearly established in different ways:

> [A] plaintiff may [1] point to existing circuit precedent that involves sufficiently "similar facts" to "squarely govern[]" the officer's actions such that the officer had "notice that [his] specific use of force [was] unlawful," *Kisela v. Hughes*, 584 U.S. [100, 105] (2018) (per curiam), [2] present "a robust consensus of cases of persuasive authority" doing the same, *see De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017), or [3] demonstrate that a general constitutional rule applied with "obvious clarity" to the facts at issue, *see Rokusek v. Jansen*, 899 F.3d 544, 548 (8th Cir. 2018).

*Boudoin v. Harsson*, 962 F.3d 1034, 1040 (8th Cir. 2020).

The interplay between qualified immunity and the motion-to-dismiss procedural posture deserves mention. The United States Supreme Court and our Eighth Circuit Court of Appeals "repeatedly have stressed the importance of resolving [qualified] immunity

questions at the earliest possible stage in litigation." *Payne v. Britten*, 749 F.3d 697, 701 (8th Cir. 2014) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).  In the Rule 12(b)(6) context, a court is to "ask only whether the facts as alleged plausibly state a claim and whether that claim asserts a violation of a clearly established right," *Payne*, 749 F.3d at 702, or put it another way, "whether immunity is established on the face of the complaint," *Schatz Fam. ex rel. Schatz v. Gierer*, 346 F.3d 1157, 1159 (8th Cir. 2003).  *See Elder v. Gillespie*, 54 F.4th 1055, 1062 (8th Cir. 2022); *Stanley v. Finnegan*, 899 F.3d 623, 627 (8th Cir. 2018); *see also Watkins v. City of St. Louis*, 102 F.4th 947, 951 (8th Cir. 2024) ("To overcome qualified immunity at the motion to dismiss stage, a plaintiff must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." (citation modified)).  Next, apply these rules to each of Mr. Hoel's § 1983 individual-capacity claims.

B

1

To state a § 1983/First Amendment-retaliation claim, Mr. Hoel must allege that: "(1) he engaged in a protected activity, (2) the government official[s] took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016).

Mr. Hoel's claim fails under the first element because the Complaint does not allege facts plausibly showing that Mr. Hoel's recording activities in the Government Center on

May 29, 2025, were in a category the First Amendment protects.  The act of recording is not always protected under the First Amendment.  "If the act of making a photograph or recording is to facilitate speech that will follow, the act is a step in the 'speech process,' and thus qualifies itself as speech protected by the First Amendment."  *Ness v. City of Bloomington*, 11 F.4th 914, 923 (8th Cir. 2021).  If, on the other hand, "the photography or recording is unrelated to an expressive purpose . . . , then the act of recording may not receive First Amendment protection."  *Id.*  Here, the Complaint does not allege facts showing the purpose underlying Mr. Hoel's recording activities.  It does not allege what he was recording or why.  It does not allege how his recording (of whatever it was) might have facilitated follow-on speech.  It is true that the Complaint describes Mr. Hoel's recording as "protected newsgathering activity."  Compl. ¶ 3; *accord id.* ¶ 23.  But the Complaint alleges no facts to support that characterization.  It does not allege how the recordings might have facilitated Mr. Hoel's sharing of news.  Absent those allegations, the "newsgathering" description is best characterized as a legal conclusion that cannot be accepted as true.  *Iqbal*, 556 U.S. at 678.

If the Complaint plausibly alleged that Mr. Hoel's recording activities were First Amendment-protected, there is another problem.  Qualified immunity applies "regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"  *Pearson*, 555 U.S. at 231 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).  In other words, Defendants here are entitled to qualified immunity unless every reasonable official should have known as a factual matter that Mr. Hoel's recording activities fell into the First

Amendment-protected speech-facilitation category.  The Complaint gives no hint as to how Defendants knew or should have known that fact.  *See* Compl.

2

Mr. Hoel alleges that "Defendants imposed a categorical ban on recording in a public lobby," and he characterizes this prohibition as "an unconstitutional prior restraint." Compl. ¶¶ 27–28.  "The term prior restraint is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur."  *Alexander v. United States*, 509 U.S. 544, 550 (1993) (citation modifed).  Put another way, "[a] prior restraint is a government regulation that limits or conditions in advance the exercise of protected First Amendment activity." *Auburn Police Union v. Carpenter*, 8 F.3d 886, 903 (1st Cir. 1993).

Mr. Hoel's prior-restraint claim fails for two fundamental reasons.  First, as explained in the preceding section, the Complaint does not allege facts plausibly showing that Mr. Hoel's recording activities were protected by the First Amendment.  Second, if the Complaint passed that hurdle, Mr. Hoel has not shown that the right he claims—to record in a courthouse's "security lobby," Compl. ¶ 12—was clearly established in May 2025.  It is difficult to see how he could.  Courts addressing the issue have held that courthouse lobbies are nonpublic forums. *See, e.g.*, *Enoch v. Hamilton Cnty. Sheriff's Off.*, No. 22-3946, 2024 WL 3597026, at *5 (6th Cir. July 31, 2024) ("In a nonpublic forum like a courthouse, 'the First Amendment rights of everyone . . . are at their constitutional nadir.'" (quoting *Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005)), *cert. denied*, 145 S. Ct. 1429 (2025); *Hodge v. Talkin*, 799 F.3d 1145, 1162 (D.C. Cir. 2015) (classifying

13

Supreme Court plaza as nonpublic forum); *Huminski v. Corsones*, 396 F.3d 53, 90 (2d Cir. 2005) (holding that "courthouses, court lands, and parking lots" are nonpublic forums); *Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998) (classifying federal courthouse lobby as nonpublic forum); *Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997) ("A courthouse . . . is a nonpublic forum."); *United States v. Vosburgh*, 59 F.3d 177 (9th Cir. 1995) (unpublished table decision) ("Courthouses are nonpublic fora, even though the public has virtually unlimited access to them."). "In addition to time, place, and manner regulations, the State may reserve [a nonpublic] forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Fams. Achieving Indep. & Respect v. Neb. Dep't of Soc. Servs.*, 111 F.3d 1408, 1419 (8th Cir. 1997) (en banc) (quoting *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 46 (1983)). Mr. Hoel has not attempted to show that any policy under which Defendants issued the Trespass Notice violated these rules.

3

The right of access to the courts "is ancillary to the underlying claim"—that is, the claim hindered by the assertedly wrongful conduct—"without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "To prove a violation of the right of meaningful access to the courts," a plaintiff must establish "the hindrance of a nonfrivolous and arguably meritorious underlying legal claim," or, in other words, an "actual injury." *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) (first citing *Harbury*, 536 U.S. at 413; and then citing *Lewis v. Casey*, 518 U.S.

14

343, 351, 353, 355 (1996)); *see Casey*, 518 U.S. at 351 (holding a plaintiff must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim"). "[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Harbury*, 536 U.S. at 415.

The Complaint does not plausibly allege an underlying legal claim or how that claim was hindered by Mr. Hoel's inability to access the Hennepin County Government Center law library. The Complaint says Mr. Hoel has "pending civil-rights lawsuits against Minneapolis and St. Louis County." Compl. ¶ 21. It provides no further information regarding these cases. It does not say what the cases are about. It does not identify what research Mr. Hoel might have been attempting to undertake in the Government Center law library to aid in these suits' prosecutions. Nor does the Complaint identify why Mr. Hoel's access to the Government Center law library was essential. It is difficult to understand how restricting Mr. Hoel's access to that law library plausibly denied him access to the courts when many other law libraries—both throughout the Twin Cities and in St. Louis County—were (and remain) open and available for him to conduct legal research. Mr. Hoel does not suggest he is prohibiting from accessing other law libraries, and the Complaint gives no reason to think that whatever research Mr. Hoel was attempting to conduct could only be accomplished in the Government Center law library.

4

"As for the Due Process Clause, standard analysis under that provision proceeds in two steps: We ask first whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). If the plaintiff cannot identify any protected liberty or property interest of which he was deprived, "any procedural due process claim necessarily fails." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012); *see Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (explaining that courts do not consider what process is due unless a plaintiff has a protected liberty or property interest).

Mr. Hoel's procedural-due-process claim fails at the first step. To support this claim, Mr. Hoel alleges "[t]he trespass ban was imposed without warning, notice, or opportunity to contest." Compl. ¶ 32. The liberty or property interest of which he was deprived, in other words, was unrestricted access to the Government Center. (Recall that the Trespass Notice did not bar Mr. Hoel from accessing the facility. The Notice included exceptions. And it was temporary.) "There is no property or liberty interest in 'having an unlimited access to a public building.'" *Peterson v. City of North St. Paul*, No. 21-cv-458 (NEB/KMM), 2021 WL 5235092, at *3 (D. Minn. Nov. 10, 2021) (quoting *Royer ex rel. Est. of Royer v. City of Oak Grove*, 374 F.3d 685, 689 (8th Cir. 2004)).

If unlimited access were a liberty or property interest, Mr. Hoel has not plausibly alleged that the procedures associated with the deprivation were constitutionally deficient. He does not allege what more notice was required before the citation was issued, and the

16

idea that more notice might be required in this context is difficult to accept. When government security officers observe what they believe to be a policy or rule violation, nothing prevents them from acting immediately to stop the violation and perhaps issue a citation. Notice to the offender is not required. And the Trespass Notice gave Mr. Hoel the opportunity to contest the ban by submitting a written response to a mailing address or to an email address for the Government Center's "Security Operations." ECF No. 14 at 3. The Complaint alleges no facts showing that Mr. Hoel was unable to take advantage of this procedure or why this procedure was insufficient.

5

Mr. Hoel's substantive-due-process claim is not plausible. As the Eighth Circuit has explained:

> In addition to its procedural protections, the Due Process Clause protects individual liberties from government action "regardless of the fairness of the procedures used to implement them." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (internal quotation marks omitted). To state a substantive due process claim against a state official, a plaintiff must demonstrate that a fundamental right was violated and that the official's conduct shocks the conscience. *Folkerts v. City of Waverly*, 707 F.3d 975, 980 (8th Cir. 2013).

*Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 898 (8th Cir. 2020). A fundamental right is one that is "objectively, 'deeply rooted in this Nation's history and tradition.'" *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (quoting *Moore v. City of East Cleveland*, 431 U.S. 494, 503 (1977)). Mr. Hoel cites no authority supporting the proposition that unrestricted access to a public building is a fundamental right. *Cf. Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 757 (7th Cir. 2012) (holding that, if

the right to intrastate travel is fundamental, it does not protect "the right to access certain public places").  And he identifies no facts that might show any Defendant's conduct was conscience-shocking.

6

Mr. Hoel's Fourth Amendment unreasonable-seizure claim is not plausible.  In May 2025, it was not clearly established that Defendants "seized" Mr. Hoel as that term is defined under the Fourth Amendment.   "A seizure occurs 'if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'"  *United States v. Grant*, 696 F.3d 780, 784 (8th Cir. 2012) (quoting *INS v. Delgado*, 466 U.S. 210, 215 (1984)).  "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."  *Id.* (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).  The circuits are split as to whether an order "meant to convey the message that a person is free to go anywhere else but cannot remain where he is"—a "move-on" order— is a Fourth Amendment seizure.  *Johnson v. City of Ferguson*, 926 F.3d 504, 509 (8th Cir. 2019) (Melloy, J., dissenting).  The Second Circuit, for example, has held that "a person who is ordered to leave a judge's chambers and then escorted out of the courthouse has not been seized because the person remains free to go anywhere else that he wishes."  *Salmon v. Blesser*, 802 F.3d 249, 253 (2d Cir. 2015) (citing *Sheppard v. Beerman*, 18 F.3d 147, 153 (2d Cir. 1994)).  The Sixth Circuit, by contrast, has held "a person is seized not only when a reasonable person would not feel free to leave an encounter with police, but also when a reasonable person would not feel free to *remain* somewhere, by virtue of some

18

official action." *Bennett v. City of Eastpointe*, 410 F.3d 810, 834 (6th Cir. 2005). The Eighth Circuit had yet to decide the question before it issued *Johnson*, though district courts within the Eighth Circuit have since understood the Circuit's cases to say that move-on orders are not seizures. *See, e.g.*, *Aunhkhotep v. Eberhart*, No. 4:24-cv-01552, 2025 WL 3012995, at *6 (E.D. Mo. Oct. 28, 2025) ("The Eighth Circuit has repeatedly held that officers do not seize a person when they simply force a person to move on.").

Here, the Complaint describes a move-along order, not a Fourth Amendment seizure. Officers stopped Mr. Hoel from recording, "surrounded" him, issued him the Trespass Notice, and "escorted him out" of the Government Center. Compl. ¶¶ 15, 16. As the Complaint describes the facts, Mr. Hoel was free to leave the Government Center and go anywhere he wanted. His return to the Government Center was restricted, though not forbidden outright. In May 2025, the Fourth Amendment's applicability to this situation was not clearly established.

Lieutenant Butler's issuance of the Trespass Notice raises a conceivable exception. When an officer is preparing a citation, ticket, or similar document, the individual to whom the officer intends to issue the citation usually is not free to leave—that individual must ordinarily wait to receive the citation. For two reasons, the possibility that Mr. Hoel was seized for this limited purpose does not save his Fourth Amendment claim. First, answering whether it is plausible that Mr. Hoel was seized during the time it took Lieutenant Butler to prepare and deliver the Trespass Notice would require consideration of the specific circumstances of this aspect of the encounter. The Complaint does not say enough to permit that inquiry. It does not allege, for example, what Lieutenant Butler said

to Mr. Hoel, whether other officers were involved in delivering the Trespass Notice, or how long this aspect of the officers' encounter with Mr. Hoel lasted. Second, if Mr. Hoel were seized during this period, the question for qualified immunity's purposes would be whether it was clearly established that the officers' use of force was "objectively unreasonable." *Pollreis v. Marzolf*, 9 F.4th 737, 747 (8th Cir. 2021). A court "cannot define clearly established law at a high level of generality." *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1012 (8th Cir. 2017) (citation modified). On this question, the Complaint alleges no facts plausibly showing that the officers' use of force was unreasonable, much more that the unreasonableness of the force was clearly established.

VI

*Monell*'s basic rule is "that civil rights plaintiffs suing a municipal entity under 42 U.S.C. § 1983 must show that their injury was caused by a municipal policy or custom." *Los Angeles County v. Humphries*, 562 U.S. 29, 30–31 (2010). Where the municipal officer violated no constitutional right, the municipality cannot be liable under *Monell*. *See Whitney v. City of St. Louis*, 887 F.3d 857, 861 (8th Cir. 2018); *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017).

Here, as discussed, the Complaint does not plausibly allege that any officer violated Mr. Hoel's constitutional rights. If the Complaint cleared that bar, the *Monell* claim would still deserve to be dismissed because the Complaint does not plausibly allege that Defendants' (allegedly) unconstitutional actions resulted from a Hennepin County policy or custom. The Complaint alleges: "Hennepin County maintains customs of (a) allowing private security to issue trespass bans enforced by deputies; (b) ignoring judicial orders

limiting videotape restrictions; (c) issuing trespass notices without warnings; and (d) obstructing accountability by refusing to identify officers." Compl. ¶ 36.  I understand that Mr. Hoel alleges these things happened to him, but identifying these actions gives no plausible reason to think they resulted from a policy or custom.  In other words, pleading a viable *Monell* policy or custom claim requires a plaintiff to do more than identify the alleged policy or custom.  To plausibly show that an alleged "custom" triggers *Monell* liability, a plaintiff must allege, among other things, "[t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" and "[d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct."  *Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). The Complaint does not address these essential elements.

VII

A

A claim under § 1985(3) requires a plaintiff to allege facts plausibly showing:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners of Am., Loc. 610 v. Scott*, 463 U.S. 825, 828–29 (1983).  A claim under § 1985(3) "requires proof of a class-based animus."  *Federer v. Gephardt*, 363 F.3d 754, 758 (8th Cir. 2004) (citing *Griffin v. Breckenridge*, 403 U.S. 88,

102 (1971)).  And "[t]here can be no civil conspiracy without an underlying constitutional violation."  *Wolk v. City of Brooklyn Center*, 107 F.4th 854, 860 (8th Cir. 2024).  The Complaint does not allege class-based animus.  And, as discussed, it fails to plausibly allege a constitutional violation.

B

"An actionable conspiracy under § 1985 is a prerequisite to a claim under § 1986 for neglect to prevent a civil rights conspiracy."  *Carter v. Wasko*, No. 4:22-CV-04103-RAL, 2024 WL 3522017, at *5 (D.S.D. July 24, 2024) (citing *Barstad v. Murray County*, 420 F.3d 880, 887 (8th Cir. 2005)); *see Jensen v. Henderson*, 315 F.3d 854, 863 (8th Cir. 2002) (recognizing that a § 1986 claim is "dependent upon a valid § 1985 claim").  The Complaint's failure to plead a plausible § 1985 claim is thus fatal to the § 1986 claim.

VIII

Mr. Hoel's claims under the Minnesota Constitution fail for purely legal reasons. Section 1983 affords no cause of action for a violation of Minnesota law.  *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (noting that a § 1983 "plaintiff must allege that some person has deprived him of a federal right"); *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000) ("It is well settled . . . that § 1983 may be an avenue for relief only when a plaintiff asserts that violations of *federal* rights have occurred.").  And "Minnesota courts explicitly refuse to find causes of action for damages under the Minesota Constitution on their own unless the Minnesota Supreme Court has recognized the cause of action."  *Riehm v. Engelking*, 538 F.3d 952, 969 (8th Cir. 2008) (first citing *Mitchell v. Steffen*, 487 N.W.2d 896, 905 (Minn. Ct. App. 1992), *aff'd on other grounds*, 504 N.W.2d

22

198 (Minn. 1993); and then citing *Bird v. State, Dep't of Pub. Safety*, 375 N.W.2d 36, 40 (Minn. Ct. App. 1985)); *see Eggenberger v. West Albany Township*, 820 F.3d 938, 941 (8th Cir. 2016) ("There is no private cause of action for violations of the Minnesota Constitution." (citation modified)); *White v. Dayton*, Nos. 11-cv-3702 *et al.* (NEB/DJF), 2023 WL 21918, at \*16 (D. Minn. Jan. 3, 2023) ("[T]here is no corollary to section 1983 under state law, and 'courts have repeatedly stated that Minnesota has not recognized private remedies for violations of the Minnesota Constitution.'" (quoting *Fearing v. St. Paul Police Dep't*, No. 02-cv-4744 (ADM/JSM), 2005 WL 914733, at \*5 (D. Minn. Apr. 20, 2005))), *R. & R. adopted*, 2023 WL 1797830 (D. Minn. Feb. 7, 2023). Here, Mr. Hoel cites no Minnesota Supreme Court case recognizing a damages remedy for any of the state constitutional theories he asserts.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.    Defendants' Motion to Dismiss [ECF No. 12] is **GRANTED**.

2.    The Complaint [ECF No. 1] is **DISMISSED WITHOUT PREJUDICE**.

### **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 9, 2026                      s/ Eric C. Tostrud
                                             Eric C. Tostrud
                                             United States District Court